KEVIN J. SENN (SBN 136226)
SENN-LAW, P.C.
2000 Crow Canyon Place, Ste. 120
San Ramon, CA 94596
Telephone: (415) 452-4361
Facsimile: (925) 830-8700

Attorneys for Defendant SHOP-VAC CORPORATION

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. SILBER, an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SHOP-VAC CORPORATION, a Pennsylvania Corporation, and DOES 1 through 100, inclusive.<br><br>Defendants. | CASE NO. 3:08CV00637-JLS-(RBB)<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>DATE:    September 4, 2008<br><br>TIME:    1:30 p.m.<br><br>FL./ROOM: 3/6<br><br>Hon. Janis L. Sammartino |

# I. INTRODUCTION

In his Opposition to Defendant SHOP-VAC CORPORATION's (hereinafter "Shop-Vac") Motion to Dismiss First Amended Complaint, Plaintiff seeks to establish two (2) key factors:

1.  The First Amended Complaint adequately alleges that Plaintiff suffered an "actual injury" such that he has "standing" to maintain his action; and

2.  Plaintiff properly alleged class allegations to maintain his action.

Plaintiff fails in each regard.

To his credit, Plaintiff pleads the truth, i.e., that he paid the "prevailing market price" for the vacuums that he purchased from Defendant. (First Amended Complaint, ¶ 18b.) Plaintiff also acknowledges the truth as supported by case law, i.e., that paying a "premium price" is required to establish "injury in fact" under the factual scenario he presents in his pleadings. (Plaintiff's Opposition to Motion to Dismiss, page 2, lines 19-22.) Unfortunately for Plaintiff, he never pleads that a "premium" price was paid for the vacuums and, therefore, these truths preclude him from having standing to maintain his action. Moreover, Plaintiff's pleading is insufficient on its face to maintain its purported class action status.

# II. LEGAL ANALYSIS

### A. Plaintiff's First Amended Complaint Fails to Adequately Allege that Plaintiff Suffered "Damage" or an "Injury in Fact" and He Therefore Lacks "Standing" to Maintain This Action

There are no material facts or reasonable inferences of such in Plaintiff's First Amended Complaint that are sufficient to establish standing to sue.

As previously set forth, for the first cause of action for violation of the CLRA, Plaintiff must allege that he "suffered <u>damage</u> as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" by the CLRA. Cal. Civ. Code. § 1780(a). For the second and third causes of action, for violation of the Section 17535 and for violation of the UCL, Plaintiff must plead that he has "suffered <u>injury in fact</u> and has <u>lost money or property</u> as a result" of the unfair

competition/violation. Cal. Bus. & Prof. Code §§ 17535 and §17204 (respectively); *Chavez v. Blue Sky Natural Beverage Co.* (ND CA 2007) 503 F.Supp.2d 1370.

Despite Plaintiff's arguments to the contrary, Plaintiff has not sufficiently pled the required economic damage or injury in fact. Even under Plaintiff's proffered legal standard for establishing standing, i.e., <u>"reasonable inferences"</u> (Plaintiff's Opposition to Motion to Dismiss, page 3, lines 26-27 and page 4, lines 17-18), Plaintiff fails to allege sufficient facts in his Complaint to establish standing.

While few cases since passage of Proposition 64's passage have directly addressed what constitutes injury in fact or loss of money as a result of unfair competition for purposes of determining standing, the majority of cases decided since Proposition 64 have concluded that a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has:

> (1) **expended money due to the defendant's acts of unfair competition** (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802-803 [plaintiff alleged he was required to purchase excess fuel when returning rental truck]);[1]
>
> (2) **lost money or property** (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1240, 1262 [plaintiff's home and car were vandalized by animal rights

---

[1] See also *Monarch Plumbing Co. v. Ranger Ins. Co.* (E.D.Cal., Sept. 25, 2006, No. Civ. S-06-1357) 2006 U.S.Dist. Lexis 68850, *20 [plaintiff alleged he paid higher insurance premiums because of defendant insurer's settlement policies]; *Witriol v. LexisNexis Group* (N.D.Cal., Feb. 10, 2006, No. C05-02392) 2006 U.S.Dist. Lexis 26670, *18-19 [plaintiff incurred costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information]; *Southern Cal. Housing v. Los Feliz Towers Homeow.* (C.D.Cal. 2005) 426 F.Supp.2d 1061, 1069 [housing rights center lost financial resources and diverted staff time investigating case against defendants]; *Laster v. T-Mobile USA, Inc.* (S.D.Cal. 2005) 407 F.Supp.2d 1181, 1194 [defendants advertised cellular phones as free or substantially discounted when purchased with cellular 9 telephone service, but plaintiffs were required to pay sales tax on the full retail value of the phones].

protestors]); or

(3) **been denied money to which he or she has a cognizable claim** (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 269-270, 285, fn. 5 [insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company]).

*Hall v. Time Inc.*, 158 Cal.App.4th 847, 854-855 (2008).

Here, Plaintiff does not sufficiently allege that he has suffered an injury in fact under <u>any</u> of the above currently accepted legal definitions. Instead, Plaintiff admits that he paid the **"prevailing market price"** for the vacuums that he purchased from Defendant. First Amended Complaint, ¶¶ 18(b). By the very definition of "prevailing market price," i.e., the usual and customary price of a good for sale when sold in a given market, Plaintiff could not have suffered – nor does he appropriately plead - any economic loss whatsoever.

### 1. <u>Payment of a Premium Price is Required to Establish Standing Under Plaintiff's Proffered Factual Scenario</u>

Importantly, although few cases since Proposition 64's passage have directly addressed what does <u>constitute</u> injury in fact or loss of money as a result of unfair competition for purposes of determining standing, there have been a fair number of cases defining what <u>does not</u> constitute "injury in fact" for purposes of determining standing.

One such case is *Chavez v. Blue Sky Natural Beverage Co.* (ND CA 2007) 503 F.Supp.2d 1370. In *Chavez*, the Court dismissed UCL and CLRA claims alleging that the defendant falsely represented that its beverages were manufactured and bottled in New Mexico. (*Id.* at 1375.) The Court found that the Plaintiffs in that case suffered no injury or damages as a result of Defendants' conduct, as they did not pay a <u>premium</u> for Defendants' beverages because the drinks purportedly

originated in Santa Fe, New Mexico. (*Id.* at 1374.) Accepting the facts as stated by plaintiffs and drawing all inferences in their favor, the court determined that defendants' promise concerning geographic origin had no value and Plaintiffs had suffered no damages by purchasing beverages they thought were produced in New Mexico by a New Mexico-based company, but actually originated in California. (*Id.*) Therefore, no "injury in fact" was found. (*Id.*)

In other words, in *Chavez*, the plaintiff got exactly what he paid for (the soda). Similarly here, Plaintiff got what he paid for (the vacuums).

Based upon the material allegations in the First Amended Complaint, as well as all reasonable inferences to be drawn from them, it must be assumed that Plaintiff would have paid the same price, for the same vacuums, no matter what. Further, it is clear that said price was <u>not</u> a <u>premium</u> price - neither because the vacuums were purportedly "MADE IN THE USA" nor for any other reason - but was instead, as Plaintiff admits, a fair and reasonable "prevailing market price." Such facts do not establish an "injury in fact" and therefore offer no basis for standing in this matter. *Chavez*, supra, at 1374.

### 2. Plaintiff's Use of "Alice-in-Wonderland" Economics Fails to Provide Support For Any Reasonable "Injury in Fact" Theory

**Nowhere does Plaintiff plead that he paid a premium price for his vacuums or that he suffered any other economic loss.** In fact, Plaintiff's only attempts at pleading anything close to such a claim simply highlight the First Amended Complaint's deficiencies.

First, Plaintiff makes repeated reference to paying an "increased price" for the Shop-Vac product itself.[2] First Amended Complaint, ¶¶ 18(b), 20. However, it is clear from Plaintiff's tortured

---

[2] Even taking Plaintiff's allegation of paying an "increased price" on its face, surely one pays "increased prices" for many reasons – most, if not all of which, are not illegal. For instance, Plaintiff could have purchased his vacuums from Defendant for a myriad of reasons, including that: 1. Shop-Vac® Corporation is the recognized world leader in wet/dry vacuum cleaners, 2. For more than 40 years, Shop-Vac® Corporation has manufactured innovative, high quality vacuum cleaners and accessories, 3. Shop-Vac® Corporation offers the most complete line of vacuum cleaners and

attempt at defining the damages he seeks to recover that this so-called "increased price" is neither a <u>premium price</u> nor any form of "injury in fact" suffered by Plaintiff whatsoever. In that regard, Plaintiff states:

> The specific measure of damages is within the realm of expert testimony, but common sense dictates that by manufacturing, distributing, and selling its wet/dry vacuums with a false "MADE IN THE USA" designation, rather than a truthful "Made in China"[3] designation (or otherwise), Shop-Vac is able to reap the proverbial "ill-gotten gains" due to the significantly lower manufacturing costs associated with Chinese-made goods (as compared to similar U.S manufactured goods). The difference between these variable products (commonly referred to as the "delta") is the "injury in fact" suffered by Plaintiff […].

Plaintiff's Opposition to Motion to Dismiss, page 6, lines 6-13.

The "injury in fact" that he claims above is <u>Shop-Vac's</u> purported "ill-gotten gains" realized from supposedly "lower manufacturing costs." How Plaintiff can claim that <u>Shop-Vac's</u> alleged "increased price" can constitute <u>his</u> injury in fact is beyond any possible realm of reasonable inference. Such a claim is akin to stating that "because Shop-Vac has operationally improved its manufacturing process to increase efficiency and lower manufacturing costs, Plaintiff deserves restitution." Such a claim is far-fetched and disallowed under the UCL. (*Korea Supply v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1147-1148.) Plaintiff is only entitled to those damages *which are money taken from Plaintiff or funds in which Plaintiff has an ownership issue.* (*Id.*) Here, that is

---

accessories available for consumer, industrial and commercial applications, or 4. Customers associate the Shop-Vac® brand with dependability and the ability to handle the toughest cleaning jobs.

[3] Although not germane to the argument, the assertion that "Made in China" should have been the

5

simply not the case.

Second, and somehow related to the above in Plaintiff's mind, is his unsupported and speculative claim that "Plaintiff and Class Member's monetary injury can be measured by the difference between the costs of U.S. made component parts versus the foreign-made component parts used by SHOP-VAC." (First Amended Complaint, ¶ 20.) This theory of damages is unsupported by case law, fact or common sense.

Nowhere does Plaintiff plead that he paid a premium price for his vacuums or that he suffered any other economic loss. Both theories above are merely far-reaching attempts at pleading "injury in fact," neither of which meets the required burden. As a result, Plaintiff does not and cannot allege facts sufficient to confer standing upon him to maintain this action, and this Court should dismiss his First Amended Complaint without leave to amend.[4]

### B. Plaintiff is Not an Adequate Class Representative

With the elimination of "representative" actions, a class action is the exclusive means for obtaining monetary recovery on behalf of others. Prop. 64, §2.

#### 1. Dismissal of Inappropriate Class Actions is Appropriate at the Pleadings Stage

In order for a class to be appropriate, each member must not be required to individually raise and litigate numerous and substantial questions to determine the member's right to recovery following any class judgment. *Newell v. State Farm Gen. Ins. Co.* (2004) 118 Cal. App. 4th 1094, 1100-01. If each class member's ability to recover "clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions **at the pleading stage.**" *Id.;* see also *In re BCBG*

---

designation, would be false.

[4] As stated in *Chavez*, supra, at 1375 (citing *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974), "[The Courts do] not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their Complaint must be dismissed."

*Overtime Cases,* 163 Cal.App.4th 1293 (Jun. 13, 2008) [the Court of Appeal (Fourth Appellate District, Division Three) approved the filing of an evidentiary, preemptive motion by the defendant to deny class certification — **before the plaintiff formally sought certification**].

### 2. The First Amended Complaint Does Not Adequately Allege a Community of Interest

Plaintiff does not deny the above requirements but simply states that "Defendant's arguments are premature and best resolved during the class certification process. At that time, Plaintiff will present the Court with particularized survey information establishing the likelihood of deception and potential uniformity of individual consumer's purchasing decisions as it relates to an unqualified 'MADE IN THE USA' representation." Opposition to Motion to Dismiss, page 8, lines 4-7.

Plaintiff's rebuttal fails.

First, as stated above, dismissal of inappropriate class actions is appropriate at the pleading stage. *Newell v. State Farm Gen. Ins. Co.* (2004) 118 Cal. App. 4th 1094, 1100-01. Therefore, Defendant's arguments are not premature.

Further, surveys regarding "likelihood of deception" and "potential uniformity of individual consumer's purchasing decisions" do nothing to address the innumerable individual questions that will require separate consideration of each class members' alleged claims with respect to causation, reliance, and damages. The burden on this Court to conduct hundreds, if not thousands, of mini-hearings on these subjects will be a gross waste of judicial resources. For instance, each prospective class member will have to be asked questions regarding whether he or she specifically chose to purchase a vacuum from Defendant because of the alleged improper "MADE IN THE USA" designation, what price was paid, whether it was a premium price paid based solely upon the designation, whether the purchase was made for any other reason, whether a special, discounted sale drive applied, and on and on.

Each class member's ability to recover clearly depends on a separate set of facts applicable only to him or her. The generalized surveys offered by Plaintiff cannot overcome this burden. As

such, the dismissal of this action is compelled. *Newell v. State Farm Gen. Ins. Co.* (2004) 118 Cal. App. 4th 1094, 1100-01.

### 3. Plaintiff Is Not An Adequate Class Representative

Plaintiff likewise does not dispute the fact that a proposed class representative has a "fiduciary duty toward the absent class members." *Diaz v. Trust Territory of the Pacific Islands* (9th Cir. 1989) 876 F.2d 1401, 1408. Instead, Plaintiff tries to explain away his premature stipulation away of all class damages above $5 million by touting the <u>non-fiduciary</u> benefits of avoiding federal jurisdiction. Opposition to Motion to Dismiss, page 8, line 22 through page 9, line 15. Assuming for the sake of argument that Plaintiff's allegations were true, it is unlikely the purported class members would be moved by Plaintiff's subjective arguments should they receive much lower damages per person than they could have otherwise have recovered. This court should be similarly unmoved.

### III. CONCLUSION

Based upon above facts and law, Plaintiff fails to adequately allege that he suffered "damage" or "injury in fact" and therefore lacks "standing" to maintain this action. Further, Plaintiff fails to properly allege class allegations sufficient to maintain his action.

Defendant therefore respectfully requests that this Court grant Defendant's Motion to Dismiss First Amended Complaint and dismiss Plaintiff's First Amended Complaint <u>without leave to amend</u>.

SENN-LAW, P.C.


By:/s/ Kevin J. Senn

KEVIN J. SENN (SBN 136226)
SENN-LAW, P.C.
2000 Crow Canyon Place, Ste. 120
San Ramon, CA 94596
Telephone: (415) 452-4361
Facsimile: (925) 830-8700
ksenn@senn-law.com
Attorneys for Defendant SHOP-VAC
CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this August 28, 2008, upon the following:

John H. Donboli
JL Sean Slattery
Del Mar Law Group, LLP
322 8th Street, Ste. 101
Del Mar, CA 92014
(858) 793-6244
(858) 793-6005 (facsimile)

_/s/ Kevin J. Senn_